Avery, J.
The bill of lading and the receipt of B. F. Smith & Co., sufficiently establish in Worthington the ownership of the goods shipped on board, this schooner, and entitle him to the proceeds of the sale. This firm of B. F. Smith & Co. appear also as mere agents and forwarders in both instruments ; the right therefore of Worthington to sue, if a suit by, any one can be maintained, does not admit of serious doubt. By the bill of lading, Teal, the master, contracts to deliver the goods to the consignees, they paying freight and charges as specified in the bill; the charges specified are $141 52, described therein as “ bill purchase ! ”
According to the terms of the contract, this captain of the boat engaged to obtain payment for the goods when he should deliver them. Had he authority to make this contract, and subject the boat to the duty of fulfilling it ? If so, the suit is properly brought against the boat, and the judgment fixing her liability is right.
*465 It is claimed that B. F. Smith & Co. ought to be deemed the owners of this boat for the trip, as they have in their receipt expressly exempted themselves from liability, the could bind no one but himself by his bill of lading ; at all events, that he could not bind the boat. . And further, if this defence cannot prevail, then it is asserted that the master of a boat has in no case authority to bind her to the performance of a contract like the present one.
If the facts in the case, by the maritime law, exempt the boat, and B. F. Smith & Co. are exempted by the form of their receipt, something like a fraud would seem to have been practiced upon the owner of these goods. The whole transaction however, upon the papers, appears to be consistent with fairness. Smith & Co. were forwarders, avoiding liability, while Teal, as captain, attempted by his contract to'secure the rights of the freighter. And the bill of exceptions shows, I think, a state of facts rendering the instruments drawn, appropriate ones for the parties.
The firm of Smith & Co., had chartered the boat from Chester Beming, the owner, for a trip to the upper Lakes and back to Cleveland. Beming furnished master and crew and defrayed their expenses and the expenses of the vessel, Smith & Co., agreeing to pay a gross sum for the trip. Thi? did not, in the opinion of the Court, make Smith & Co., the owners of the boat for the trip, but left her still as the boat of Beming, the general owner; 1 Cranch’s Rep. 214; 8 Cranch’s Rep. 39; 1 Johns. Rep. 228.
A bill of lading like the present must frequently become necessary, where goods are carried for various freighters. The master of this boat had authority to execute such an instrument and make it binding upon the boat ; Abbot,. 156; Cowen’s Rep. 193; Swan’s Slat. 209.
The ship, by the maritime law, is bound to the performance of every contract made by the master, within the scope of his authority ; 3 Kent’s Com. 162.
The shipper has a lien on the vessel for the execution of a *466 contract by bill of lading entered into by the master; Abbot 011 s^'PP^nS5 Stay & Warkins, 161, notps.
Our statute, providing for the collection of claims against steamboats and other water crafts, declares that the boat shall be liable “ for damages arising out of any contract for the transportation of goods.”
The decision of the Court therefore is, that the Argyle was liable upon this bill of lading, and the judgment of the Common Pleas must be affirmed.